**Amin RASHID d/b/a Amin A. Rashid & Associates, Plaintiff,**

v.

**Charles W. KITE d/b/a International Isotope Enrichments Corporation, Timothy Kurtz d/b/a International Isotope Enrichments Corporation, John P. Newton, Jr., individually and in his capacity as an United States Bankruptcy Trustee, Thomas P. Suddath, Jr., individually and in his official capacity as an Assistant United States Attorney, Carol Hazelton, individually and in her official capacity as an United States Inspector and Jerria Williams, individually and in her official capacity as an FBI Special Agent, Defendants.**

**Civil Action No. 95–7868.**

United States District Court, E.D. Pennsylvania.

Feb. 20, 1997.

Amin A. Rashid, White Deer, PA, Plaintiff, Pro Se.

Charles W. Kite, Sevierville, TN, Timothy Kurtz, Pittsburgh, PA, and John P. Newton, Knoxville, TN, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Though five motions in this matter are ready for decision, today we address only the Motion of Defendant Charles W. Kite ("Kite") to Dismiss for Lack of Subject Matter Jurisdiction. For the following reasons, we conclude that we lack subject matter jurisdiction over what remains of this action and deny all other motions as moot.

## BACKGROUND

Plaintiff Amin A. Rashid doing business as ("d/b/a") Amin A. Rashid & Associates ("Plaintiff") is a *pro se* litigant currently serving a 14–year federal prison sentence. This lawsuit concerns Plaintiff's business dealings prior to his conviction with Defendants Charles W. Kite d/b/a International Isotope Enrichment Corporation ("Kite") and Timothy Kurtz d/b/a International Isotope Enrichment Corporation ("Kurtz"). Kite is a citizen of Tennessee and, according to the Complaint, both Plaintiff and Kurtz are citizens of Pennsylvania.

Plaintiff's Complaint, filed January 24, 1996, originally stated three causes of action (two state and one federal) against six defendants. Plaintiff invoked both federal question and diversity jurisdiction over his Complaint. We have dismissed various claims and defendants by orders dated June 26, 1996, *see Rashid v. Kite*, 934 F.Supp. 144 (E.D.Pa.1996) (dismissing federal and one state cause of action against Kite); June 28, 1996 (dismissing federal cause of action against remaining three defendants); and January 7, 1997 (dismissing Defendant John P. Newton, Jr.). What remains of Plaintiff's Complaint are Count I for breach of contract against Kite and Kurtz and Count II for fraud and misrepresentation against Kurtz alone. Kite has also asserted a state law counterclaim against Plaintiff, as has Defendant Newton.

The allegations relevant to Counts I and II are as follows. On January 10, 1990, Plaintiff entered into a Financing Agreement (the "Agreement") with the putative International Isotope Enrichment Corporation ("IIEC"). Kurtz and Kite represented to Plaintiff that IIEC was a Tennessee corporation and Kurtz, who identified himself as IIEC's President, signed the Agreement on IIEC's behalf. Under the Agreement, Plaintiff was to employ his "best efforts" to secure a $5.4 million loan to IIEC for the purchase of various equipment from the Department of Energy. Further, as part of the Agreement, IIEC promised not to contact directly any prospective lender introduced to IIEC by Plaintiff without Plaintiff's prior written authorization. IIEC also agreed that, in the event of such contact, the contract would terminate Plaintiff's duties under the Agreement and render Plaintiff's fees due and payable.

Plaintiff alleges in this action, however, that no such corporation called IIEC ever existed. Plaintiff contends also that Kite and Kurtz made numerous other false representations about the corporation and the transaction for which they were attempting to secure financing. In addition, Plaintiff alleges that Kite and Kurtz, both allegedly doing business as IIEC, breached the Agreement by directly contacting numerous lenders without Plaintiff's prior approval.

We turn now to the merits of Kite's Motion to Dismiss.

## DISCUSSION

Kite has now moved to dismiss this action for lack of subject matter jurisdiction on the grounds that Plaintiff and Kurtz are both

citizens of Pennsylvania, thus complete diversity is lacking. Plaintiff's two arguments in response plainly lack merit.[1] Nevertheless, we carefully examine the issues raised by Kite's Motion in deciding whether it must be granted.

It is well-settled that, in order to sustain diversity jurisdiction under 28 U.S.C. § 1332, all of the parties on one side of the controversy must be citizens of different states than all of the parties on the other side. *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). This statute must be strictly construed. *City of Indianapolis,* 314 U.S. at 76, 62 S.Ct. at 20. The burden of proving diverse citizenship falls on the party invoking federal jurisdiction. *Enza, Inc. v. We the People, Inc.,* 838 F.Supp. 975, 977 (E.D.Pa.1993).

■ In this case, Plaintiff and Kite are citizens of Pennsylvania and Tennessee, respectively. Kurtz's citizenship is uncertain because he has never been served with the Complaint in this action, and we do not know where he may be found. The United States Marshals attempted service on Kurtz, pursuant to 28 U.S.C. § 1915 and Rule 4(c), at the Pennsylvania address identified at ¶ 3 of Plaintiff's Complaint, but the service of process form was returned unexecuted. According to the service form, Kurtz could not be found at that address. Still, Plaintiff has the burden of proving subject matter jurisdiction, so we accept as true his allegation that Kurtz is a Pennsylvania citizen. Further, Kurtz remains a party to this action even though he was not served. *See Howell v. Tribune Entertainment Co.,* 106 F.3d 215, 217–18 (7th Cir.1997) ("in the federal judicial system a party becomes a defendant not when he is served but when the complaint against him is filed"); Fed.R.Civ.P. 3. Thus,

as matters stand now, this action consists of two Pennsylvania causes of action brought by a Pennsylvania plaintiff, one against defendants from Tennessee and Pennsylvania and the second against the Pennsylvania defendant only. We have no independent basis of jurisdiction over Count II, thus whether we may retain jurisdiction over this action depends entirely on whether we may exercise jurisdiction over the breach of contract claim in Count I.

■ Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21.[2] In particular, we have the authority to drop non-diverse parties whose presence is not essential to the suit in order to preserve and perfect diversity jurisdiction. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 2222–23, 104 L.Ed.2d 893 (1989); *Field v. Volkswagenwerk AG,* 626 F.2d 293, 296–97 (3d Cir.1980). In other words, the non-diverse party may be dismissed if it is not "indispensable." *Enza, Inc.,* 838 F.Supp. at 977. We must therefore determine whether Kurtz is a party indispensable to Plaintiff's breach of contract claim.

"Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of the particular litigation." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968). This issue must be addressed on a case-by-case basis by "(1) appraising [the indispensable party's] interest, and then (2) considering the equitable principles described in Rule 19." *Steel Valley Authority v. Union Switch & Signal Division,* 809 F.2d

---

1. Plaintiff argues first that complete diversity of citizenship is not required for federal diversity jurisdiction, citing *Singh v. Daimler–Benz,* 9 F.3d 303 (3d Cir.1993). In *Singh,* however, our Court of Appeals merely noted that complete diversity is a statutory requirement, not constitutional, and that Congress is empowered to authorize federal jurisdiction so long as one plaintiff and one defendant are diverse. *Id.* at 305.

Plaintiff also contends that Kite has waived the defense of "lack of personal jurisdiction." Kite's motion concerns this Court's subject matter jurisdiction, which, as Plaintiff himself agrees, may be raised by any party or the court at any time.

2. Also available is Rule 4(m), which empowers this Court "on its own initiative after notice to the plaintiff, [to] dismiss the action without prejudice as to that defendant" Fed.R.Civ.P. 4(m).

1006, 1011 (3d Cir.1987) (quoting 3A J. Moore, *Moore's Federal Practice* ¶ 19.02 n. 9.). Determining whether Kurtz is indispensable under Rule 19 is a two-step process. *Field,* 626 F.2d at 297 ("Although the district court's authority to dismiss non-diverse parties who are not indispensable derives from Fed.R.Civ.P. 21, the primary factors to be considered by the district court in determining whether a party is indispensable are listed in Fed.R.Civ.P. 19."). First, we ask whether Kurtz is a "person to be joined if feasible" under Rule 19(a)—a "necessary party" under "the more traditional terminology." *Johnson & Johnson v. Coopervision Inc.,* 720 F.Supp. 1116, 1121 (D.Del.1989). A party is deemed necessary under Rule 19(a) if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Civ.P. 19(a).

If we conclude that Kurtz is a necessary party, we then determine under Rule 19(b) whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R.Civ.P. 19(b); *Enza,* 838 F.Supp. at 978. "To help courts navigate the path of equity and good conscience," *U.S. ex rel Hall v. Tribal Development Corp.,* 100 F.3d 476, 479 (7th Cir.1996), Rule 19(b) lists four factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether

the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. Fed.R.Civ.P. 19(b). Still, no precise formula exists for making this determination, *see Enza,* 838 F.Supp. at 978, and courts must engage in "fact-specific, flexible analysis" of the relative interests of those already parties, the absent party, the courts and the public in making it. *Johnson & Johnson,* 720 F.Supp. at 1122; *Provident Tradesmens Bank,* 390 U.S. at 109–111, 88 S.Ct. at 737–39. We have substantial discretion as we engage in this balancing of interests. *Janney Montgomery Scott v. Shepard Niles,* 11 F.3d 399, 403 (3d Cir.1993). With these principles in mind, we turn to the instant case.

Determining whether Kurtz is both necessary and indispensable to Plaintiff's breach of contract claim is complicated by the uncertain nature of IIEC as a business organization and the interest, if any, that Kurtz and Kite retain with respect to it. Plaintiff alleges that IIEC was a "non-existent corporation" and that Kite and Kurtz were simply "doing business as" IIEC. Kite responds in his Answer to Plaintiff's Complaint, however, that "IIEC was mainly organized by joint agreement of Kurtz and himself" as of the date of the contract with Plaintiff. (Kite's Answer ¶ 13). There is nothing further in the record regarding the nature of this "joint agreement" or the nature of the business organization that was created. It is therefore uncertain what impact, if any, a judgment against Kite "doing business as" IIEC might have—pursuant to either the alleged agreement that created IIEC or any legal rules that may govern contracts entered into on its behalf—on any interests that Kurtz may retain in IIEC. We must therefore apply the Rule 19 factors in light of this uncertainty.

We find that Kurtz is a necessary party under Rule 19(a)(2)(i). Under the plain terms of Rule 19(a), it is sufficient that a judgment against Kite in this action "*may* as a practical matter impair or impede" Kurtz's ability to protect any interest that he holds with respect to IIEC. *See* Fed.R.Civ.P. 19(a)(2)(i) (emphasis added). Though it is unclear whether such a judgment would necessarily have such an effect pursuant to the

agreement that created IIEC or any applicable legal rules that govern its contracts, it is clearly possible. We therefore conclude that Kurtz is a party to be joined if feasible under Rule 19(a), and turn to whether he is indispensable to the breach of contract claim under 19(b).

The considerations that militate most strongly in favor of concluding that Kurtz is indispensable generally fall under the rubric of "equity and good conscience" rather any particular Rule 19(b) factor. First, we agree with Kite that it is important that Kurtz executed the Agreement sued on in this case. In fact, according to Plaintiff's Complaint, Kurtz executed the Agreement on behalf of a corporation that does not exist and is therefore himself a party to the Agreement. Generally, in breach of contract actions, all parties to the contract should be joined. *See Travelers Indem. Co. v. Household Intern., Inc.*, 775 F.Supp. 518 (D.Conn.1991) ("the precedent supports the proposition that a contracting party is the paradigm of an indispensable party"); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F.Supp. 831, 836 n. 7 (D.Del.1978) (if "the rights sued upon arise from a contract, all parties to the contract must be joined").

In addition, there is no direct contractual relationship between Plaintiff and Kite in this case. The Agreement sued on was signed only by Plaintiff and Kurtz on behalf of IIEC. Therefore, to recover from Kite for the alleged breach, Plaintiff will have to establish that Kurtz was Kite's agent for purposes of binding Kite to the Agreement. A similar situation faced the court in *F & M Distributors v. American Hardware Supply*, 129 F.R.D. 494 (W.D.Pa.1990). In *F & M Distributors*, plaintiff brought a breach of contract action against a party with whom it had no explicit contractual relationship. Plaintiff's claim hinged on the defendant's agency relationship with a third party that had not been named as a defendant. The court held that this third party was indispensable because, in part, it was "a crucial link in the chain that forms the factual and legal basis for [the plaintiff's] cause of action." *Id.* at 499. We find the same to be true here.

A third consideration is that of judicial efficiency and economy. The Supreme Court has noted in this context that the courts and the public have an interest in the "complete, consistent and efficient settlement of controversies." *Provident Tradesmens Bank*, 390 U.S. at 111, 88 S.Ct. at 739. Plainly, the most efficient resolution of this contractual dispute would be a single action in which Plaintiff, Kurtz and Kite all are parties. Moreover, nearly all of Plaintiff's allegations of wrongdoing concerning the Agreement implicate Kurtz and Kite jointly. In fact, whether the contract was actually breached may depend on the sum total of their actions rather than on any one act in particular. Where the conduct of two defendants is so significantly intertwined, resolving the dispute as to both in a single action is clearly preferable. *See, e.g., Johnson & Johnson*, 720 F.Supp. at 1126–27 (finding party indispensable where state court litigation involving all principal actors was on-going); *Doughan v. Tutor Time Child Care Systems, Inc.*, 1996 WL 502288, *3 (E.D.Pa. Aug. 27, 1996) (finding party indispensable where Florida court could exercise jurisdiction over all concerned parties).

On the other hand, the factors identified in Rule 19(b) do not cut so strongly against proceeding with this litigation in Kurtz's absence. First, as discussed *supra*, it is simply unclear based on the record before this Court what practical effect a judgment against Kite on Plaintiff's breach of contract claim would have on Kurtz, other than its potentially adverse precedential effect in any subsequent litigation against Kurtz. *Cf. Doughan*, 1996 WL 502288 at *3 (noting impact of "adverse persuasive precedent" in discussion of 19(b) factors); *Janney Montgomery Scott*, 11 F.3d at 406–11 (holding that district court erred in considering precedential weight of decision on future litigation in 19(a)(2)(i) analysis). As to the second and third factors, given the uncertain nature of IIEC as a business organization, it is unclear whether we could award adequate relief without prejudicing Kurtz's interests. Any ability to shape the appropriate relief—by requiring that any monetary judgment against Kite not be paid out of IIEC proper-

ty jointly with Kurtz and/or IIEC, for example—might be restricted by the agreement between Kite and Kurtz that created IIEC and any applicable legal rules.

The fourth 19(b) factor—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—weighs slightly in favor of dismissing this matter, but not unequivocally. In this case, the Pennsylvania "savings statute" codified at 42 Pa.Cons.Stat.Ann. § 5103 would permit Plaintiff to refile his case in state court "simply by filing a certified transcript of the district court proceedings with the appropriate state authority." *Moravian School Advisory Board of St. Thomas, V.I. v. Rawlins,* 70 F.3d 270, 279 (3d Cir.1995) (Becker, J., concurring and dissenting); *see also McLaughlin v. ARCO Polymers, Inc.,* 721 F.2d 426, 430–31 (3d Cir.1983). Under § 5103, the date of institution of the federal suit would serve as the state court filing date for statute of limitations purposes, thereby obviating any limitations problems caused by the dismissal. *Id.* at 431 n. 6; *see also Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir.1982). On the other hand, Plaintiff is a *pro se* litigant seeking to prosecute his case from prison. His ability to locate Kurtz and serve him with this Complaint will be severely limited so long as he remains there. Thus, even if Plaintiff were to refile in state court pursuant to § 5103, he may still only be able to litigate his claim against Kite, in which case this dismissal would serve only delay the disposition of this matter.

After carefully considering the facts and uncertainties of this case, the strict construction we must give § 1332, and the fact that the burden of proving jurisdiction rests with Plaintiff, we conclude that Kurtz is indispensable to Plaintiff's breach of contract claim. We find that it is essential, for the just and complete resolution of this claim, that Kurtz remain a party to this action as he is one of two persons "doing business as" IIEC, the party who executed the contract sued on, and one of the two who allegedly breached it.

## CONCLUSION

We conclude that we are unable to perfect diversity jurisdiction by dismissing Kurtz from the case, and must therefore dismiss the action in its entirety for want of subject matter jurisdiction. We do so without prejudice, however, and with leave to refile the breach of contract claim in state court pursuant to 42 Pa.Cons.Stat.Ann. § 5103. An appropriate Order follows.

## ORDER

AND NOW, this 20th day of February, 1997, upon consideration of Motion of Defendant Charles W. Kite to Dismiss for Lack of Jurisdiction (Document No. 66), and Plaintiff's response thereto, it is hereby ORDERED as follows:

(1) that the Motion is GRANTED and this action is DISMISSED for lack of subject matter jurisdiction, with leave to follow the procedures outlined in 42 Pa.Cons.Stat.Ann. § 5103; and

(2) that Plaintiff's Motion for Reconsideration of Judgment Pursuant to Rule 59(e) (Document No. 57), Defendant John P. Newton's Motion for Entry of Default (Document No. 58), Defendant Charles W. Kite's Motion for Partial Summary Judgment (Document No. 65), Plaintiff's Request to Modify Scheduling Order (Document No. 68), and Plaintiff's Motion for Rule 11 Sanctions Against Defendant Counter–Plaintiff John P. Newton (Document No. 76) are all DENIED as MOOT.